UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

RODNEY RIDDLE,
    Plaintiff,

    vs.

WELLS FARGO BANK NATIONAL
ASSOCIATION,
    Defendant.

Case No. 1:15-cv-533
Dlott, J.
Litkovitz, M.J.

REPORT AND
RECOMMENDATION

## I. Introduction

Plaintiff Rodney Riddle brings this action under the Fair Debt Collection Practices Act

("FDCPA"), 15 U.S.C. § 1692 *et seq.*, for a claim arising out of a state foreclosure action.  This

matter is before the Court on defendant Wells Fargo Bank, National Association as Trustee for

Securitized Asset Backed Receivables LLC 2005-FR3 Mortgage Pass-Through Certificates,

Series 2005-FR3's ("Wells Fargo") motion to dismiss the complaint under Federal Rule of Civil

Procedure 12(b)(1) and (b)(6) for lack of subject matter jurisdiction and for failure to state a

claim for relief (Doc. 3), plaintiff's response in opposition to defendant's motion to dismiss

(Doc. 5), and defendant's reply (Doc. 6).

## II. Facts[1]

On May 4, 2010, Wells Fargo filed a foreclosure complaint in the Hamilton County, Ohio

Court of Common Pleas against Riddle and his wife Dionne Y. Riddle.[2]  (Complaint in

Foreclosure, Doc. 3-1, Exh. 1).  The complaint was signed by an attorney for Lerner, Sampson &

Rothfuss ("LSR").  (*Id.*).  Wells Fargo attached to the complaint a copy of the promissory note

---

[1] The parties have attached to their briefs documents from the related foreclosure case in the Hamilton County Court
of Common Pleas.  The Court may take judicial notice of these documents without converting defendant's motion to
dismiss into a motion for summary judgment.  *See New England Health Care Emps. Pension Fund v. Ernst &
Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003) (holding that a court "may consider materials in addition to the
complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice"); Fed. R.
Evid. 201(c)(2) (providing that a court "must take judicial notice if a party requests it and the court is supplied with
the necessary information").
[2] Mrs. Riddle is not a party to the instant action.

on a house in Cincinnati located at 11440 Gideon Lane. (Note, Doc. 3-1, Exh. A to Exh. 1). The note, which was dated February 15, 2005 and signed by Dionne Riddle, indicated that Fremont Investment and Loan ("Fremont") had loaned Mrs. Riddle $208,800 on the property. (*Id.*). Wells Fargo also attached an undated "Allonge to Promissory Note," which stated: "The undersigned, acting on behalf of Fremont Investment & Loan, hereby transfers to, Wells Fargo . . . the Note and all right to payment of all balances outstanding thereunder." (Allonge to Promissory Note, Doc. 3-1, Exh. A to Exh. 1). The allonge was signed by Melissa Viveros, vice president of Fremont Investment & Loan. (*Id.*). The allonge indicated that its "LSR Number" was 200931349. (*Id.*). Also attached was a copy of the mortgage on the property, which indicated that the Riddles were the borrowers, Fremont was the lender, and Mortgage Electronic Registration Systems, Inc. ("MERS") was the mortgagee as Fremont's nominee. (Mortgage, Doc. 3-1, Exh. B to Exh. 1). MERS filed an assignment to Wells Fargo of the note and mortgage in the Hamilton County Recorder's Office on July 17, 2006. (Assignment of Note and Mortgage, Doc. 3-1, Exh. C to Exh. 1).

On September 22, 2010, a Hamilton County magistrate entered a decision finding that Wells Fargo was entitled to judgment as a matter of law and ordering a sheriff's sale of the property. (Sept. 22, 2010 Magistrate's Decision (Foreclosure), Doc. 3-2, Exh. 2). The magistrate indicated that while Dionne Riddle had filed an answer contesting Wells Fargo's right to foreclosure, Riddle had not filed any responsive pleading, was in default, and was "forever barred from asserting any right, title or interest" in the property. (*Id.*). On December 14, 2010, the Hamilton County Court of Common Pleas confirmed the magistrate's decision. (Final Entry Confirming Magistrate's Decision and Overruling Objection, Doc. 3-3, Exh. 3).

On January 12, 2011, Dionne Riddle filed a motion to set aside the judgment on the basis that the allonge and the assignment of the note and mortgage were invalid. (Motion to Set Aside

Judgment, Doc. 3-4, Exh. 4).  Dionne Riddle argued that the allonge was prepared by LSR as part of the foreclosure proceedings because it bore that firm's "LSR number" that corresponded to the foreclosure case.  Dionne Riddle also asserted that: (1) the signer of the allonge, Melissa Viveros, was an employee of Countrywide Home Loans, not Fremont; (2) the allonge was not notarized; and (3) the allonge did not bear a stamp indicating that it had ever been recorded.  As to the assignment of note and mortgage, Dionne Riddle asserted that it was fraudulent because it was signed by two Bank of America vice presidents, and Fremont was out of business when it was prepared and filed.  She argued that MERS did not own the note and did not have the authority to transfer or assign it.  (*Id.*).  On April 14, 2011, Dionne Riddle filed a motion to vacate the judgment in which she again challenged the validity of the allonge and argued that MERS never had the authority to transfer the promissory note.  (Motion to Vacate Judgment and Dismiss Plaintiff Claims, Doc. 3-5, Exh. 5).  The magistrate denied both motions.  (May 2011 Magistrate's Decision (Foreclosure), Doc. 3-6, Exh. 6).  On June 16, 2011, the Hamilton County Court of Common Pleas adopted the magistrate's decision.  (Judgment Entry (Foreclosure), Doc. 3-7, Exh. 7).

Orders for sale were issued in October 2011, October 2012, November 2013, July 2014, and December 2014.  (*See* Hamilton County Docket, Doc. 3-8, Exh. 8).  These orders of sale were withdrawn in response to automatic stays imposed by the Riddles' repeated bankruptcy filings.  (*See id.*).

On August 26, 2014, Dionne Riddle filed a motion for limited discovery and to vacate the judgment, again arguing that the allonge was fraudulent and citing the Ohio Supreme Court's decision in *Fed. Home Loan Mortg. Corp. v. Schwartzwald*, 979 N.E.2d 1214 (Ohio 2012), for the proposition that Wells Fargo did not have standing to file a foreclosure complaint because it had not secured an interest in the note and mortgage before filing suit.  (Motion for Limited

Discovery and, to Dismiss and Vacate Judgment, Doc. 3-9, Exh. 9). The magistrate denied the motion. (Dec. 23, 2014 Magistrate's Decision (Foreclosure), Doc. 3-10, Exh. 10).

On February 6, 2015, Rodney Riddle filed his own motion to dismiss and set aside the judgment, arguing that the allonge was fraudulent, and the court of common pleas had not confirmed the magistrate's December 23, 2014 decision. (Motion to Dismiss and Set-Aside Judgment, Doc. 3-11, Exh. 11). On August 13, 2015, Riddle filed an objection to reactivating the case based on his filing of the instant federal action. (Objection to Reactivating Case, Doc. 3-12, Exh. 12).

In the pro se complaint in the instant action, which Riddle has titled "Cease and Desist Action," he alleges a violation of the FDCPA related to LSR's filing on Wells Fargo's behalf a "Fictitious Foreclosure action." (Doc. 1 at 1-2). He asserts that the Federal Deposit Insurance Corporation closed Fremont in 2008 and that Fremont never transferred the note to Wells Fargo. (*Id.*). The complaint further alleges:

> My complaint is centered around the defendant['s] collection practices, against me. The defendant even until this day do[es] not hold the OWNERSHIP right to p[u]rsue collection activities against me. The defendant must possess the Note as an owner of the Note, in which I made a commitment to, to p[u]rsue collection of the Note, from me.

> Even before, the defendant filed the foreclosure action against me. Wells Fargo Bank, fictitiously described itself as the owner of the note, and that it is a DEBT COLLECTOR, trying to collect a debt, and that I made a commitment on a Note in which they are the owner. I don't owe the defendant anything, [y]et the defendant is trying to foreclose on my home.

(*Id.* at 2). In his complaint, Riddle asks the Court to issue a cease and desist order against Wells Fargo because he "own[s] [his] property free and clear, and it cannot be attached as an asset for them to sell to satisfy someone else['s] debt." (*Id.*). Riddle asserts that his "name is not attached to any debt due to Wells Fargo Bank," and that Wells Fargo's "foreclosure against [his] property is illegal and [he] want[s] to stop it." (*Id.* at 3).

4

### III. Legal Standards

"A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004).

Rule 12(b)(6) permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The plaintiff's ground for relief must entail more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The plaintiff has satisfied Rule 12(b)(6) if he has pled enough facts "to state a claim to relief that is plausible on its face." *Id.* at 570. Specific facts are not necessary and the pleader is only required to give fair notice of the claim and the grounds upon which it rests. *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008). The Court must hold pro se pleadings to less stringent standards than those prepared by attorneys and must liberally construe them when determining whether they fail to state a claim. *See, e.g., Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004).

### III. Resolution

Defendant argues in its motion to dismiss that under the *Rooker-Feldman* doctrine, the Court lacks jurisdiction to hear plaintiff's challenge to his state court foreclosure judgment. (Doc. 3 at 6-8).[3] Defendant contends that "[t]he source of the injury alleged by [plaintiff] is without question the state court judgment" because plaintiff asks the Court to enjoin the

---

[3] Citations to this document refer to the page numbers provided by CM/ECF, not the document's internal page numbers.

foreclosure proceedings. (*Id.* at 8). Defendant also argues that principles of claim preclusion foreclose plaintiff's federal suit. (*Id.* at 8-11). Specifically, defendant asserts that the state court's December 14, 2010 judgment adopting the magistrate's foreclosure decision constituted a prior final judgment on the merits and that the state case involved the same parties as the instant action. (*Id.* at 9-10). Moreover, defendant contends that plaintiff's instant complaint raises only the same claims concerning the alleged defects in the enforceability of the note and the mortgage that were raised and rejected in the state action. (*Id.* at 10-11). Finally, defendant argues that both the state and federal action arise out of the same transaction and occurrence, i.e., the enforceability of the note and mortgage and the underlying contractual relationship between the parties. (*Id.* at 11).

Plaintiff responds that the *Rooker-Feldman* doctrine does not apply to bar his federal claim brought under the FDCPA that seeks "to review the practices of a Debt Collector, and stop the collector if they are collecting debt improperly." (Doc. 5 at 1). Plaintiff contends that defendant and LSR meet the definition of a debt collector. (*Id.* at 2). As to claim preclusion, plaintiff argues that his claim under the FDCPA that a debt is being collected improperly is not precluded. (*Id.* at 3). Plaintiff asserts:

> The claim wants the defendant foreclosure documents reviewed by the court, and relief to be granted. If it is found that the defendant[']s documents are improper for a foreclosure in Ohio, then the foreclos[ure] case will be drop[p]ed . . . and the Hamilton county court of common pleas will be without jurisdiction to hear the case and the case will be dismissed.

(*Id.*). Plaintiff contends that claim preclusion "do[es] not apply because the collection practices of the defendant are being reviewed by this court." (*Id.*). Plaintiff also indicates that he moves the Court "for leave to amend [his] initial complaint, if the court feels it lacks jurisdiction, and that [he] ha[s] failed to state a claim where upon relief can be granted." (*Id.* at 7).

In reply, defendant argues that plaintiff's response establishes that the *Rooker-Feldman*

doctrine bars the instant action because plaintiff admits that he is seeking federal review of the

state foreclosure action and to stay execution of the state judgment. (Doc. 6 at 1-2). As to claim

preclusion, defendant contends that "[t]he basis of Riddle's purported FDCPA claim is Wells

Fargo's lack of standing to foreclose," but that the state court already decided that issue when it

granted the foreclosure judgment, and plaintiff was required to raise the standing issue in the

foreclosure action. (*Id.* at 2-3). Further, defendant argues that plaintiff has not stated a plausible

claim under the FDCPA because (1) he is not a "consumer" indebted to defendant as he signed

only the mortgage and not the note; and (2) he is seeking only injunctive relief, which is not

available under the FDCPA. (*Id.* at 3-5).

### A. The *Rooker-Feldman* Doctrine

In *Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 415-16 (1923), and *D.C. Ct. of Appeals v.*

*Feldman*, 460 U.S. 462, 476-87 (1983), the Supreme Court held that lower federal courts lacked

jurisdiction to conduct appellate review of state court judgments. In *Feldman*, the Court

explained that lower federal courts could not consider claims that were "inextricably

intertwined" with a state court's decision. 460 U.S. at 483 n.16, 486-87. Revisiting the scope of

the *Rooker-Feldman* doctrine in a more recent decision, the Supreme Court held that the doctrine

"is confined to cases of the kind from which the doctrine acquired its name: cases brought by

state-court losers complaining of injuries caused by state-court judgments rendered before the

district court proceedings commenced and inviting district court review and rejection of those

judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The

Court further held that "[i]f a federal plaintiff 'present[s] some independent claim, albeit one that

denies a legal conclusion that a state court has reached in a case to which he was a party . . . ,

then there is jurisdiction and state law determines whether the defendant prevails under

principles of preclusion.'" *Id.* at 293 (citation omitted).

In the wake of *Exxon Mobil*, the Sixth Circuit held that the *Rooker-Feldman* doctrine

does not apply when a plaintiff "asserts *independent claims* that . . . state court judgments were

procured by certain Defendants through fraud, misrepresentation, or other improper means,"

instead of claiming "an injury caused by the state court judgments" themselves. *McCormick v.*

*Braverman*, 451 F.3d 382, 392 (6th Cir. 2006) (emphasis in original). The Sixth Circuit

explained that the source of the injury was the relevant factor in determining whether the

*Rooker-Feldman* doctrine applied:

> The inquiry then is the source of the injury the plaintiff alleges in the federal
> complaint. If the source of the injury is the state court decision, then the
> *Rooker-Feldman* doctrine would prevent the district court from asserting
> jurisdiction. If there is some other source of injury, such as a third party's actions,
> then the plaintiff asserts an independent claim.

*Id.* at 393. *See also Todd v. Weltman, Weinberg & Reis Co., L.P.A.*, 434 F.3d 432, 437 (6th Cir.

2006) (holding the *Rooker-Feldman* doctrine did not bar plaintiff's FDCPA claim that defendant

obtained a favorable state court judgment by filing a fraudulent affidavit); *Brown v. First*

*Nationwide Mortg Corp.*, 206 F. App'x 436, 440 (6th Cir. 2006) (per curiam) (holding the

*Rooker-Feldman* doctrine did not bar plaintiff's claims based on foreclosure obtained through

defendants' fraud); *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139-41 (9th Cir. 2004) (holding

the *Rooker-Feldman* doctrine did not bar a federal plaintiff from seeking to set aside a state court

judgment obtained by extrinsic fraud because "[e]xtrinsic fraud on a court is, by definition, not

an error by that court"); *but see Givens v. Homecomings Fin.*, 278 F. App'x 607, 608-09 (6th Cir.

2008) (holding *Rooker-Feldman* barred plaintiff's FDCPA claim that defendants failed to

provide him with sufficient verification of his debt and seeking only an injunction to keep

defendants from entering the property at issue).

Here, the *Rooker-Feldman* doctrine does not bar plaintiff's FDCPA complaint. Plaintiff's complaint alleges that the source of his injury was defendant's alleged fraudulent filings that led up to the state court's foreclosure decision. (*See* Doc. 1 at 1-3). Thus, plaintiff is asserting an "*independent claim*[] that . . . [the] state court judgment[] [was] procured by [defendant] through fraud, misrepresentation, or other improper means," and this Court may exercise jurisdiction under the FDCPA to hear that claim. *McCormick*, 451 F.3d at 392 (emphasis in original).

While it is true that the only remedy plaintiff has requested is injunctive relief to stop the foreclosure on his property, the undersigned concludes that this is not fatal to this Court's jurisdiction to consider his claim. First, although the Sixth Circuit held in *Givens* that the *Rooker-Feldman* doctrine barred an FDCPA claim where the plaintiff sought only injunctive relief to retain possession of the property at issue, the undersigned finds *Givens* unpersuasive as an unpublished decision when compared to the Sixth Circuit's published decision in *McCormick*. *See Givens*, 278 F. App'x at 608-09; *Fonseca v. Consol. Rail Corp.*, 246 F.3d 585, 591 (6th Cir. 2001) (holding that "unpublished opinions are never controlling authority"). In *McCormick*, the Sixth Circuit held that the source of the injury, not the requested remedy, was the relevant inquiry in determining the applicability of the *Rooker-Feldman* doctrine. *See McCormick*, 451 F.3d at 393. Second, the undersigned finds *Givens* distinguishable as the plaintiff in that case alleged that defendants failed "to provide him with sufficient verification of his debt," but did not raise a claim that defendants had obtained a state court judgment against him "through fraud, misrepresentation, or other improper means." *Cf. Givens*, 278 F. App'x at 608 *with McCormick*, 451 F.3d at 392. Finally, even if plaintiff's request for injunctive relief alone barred this Court's jurisdiction based on *Givens*, plaintiff has requested leave to amend his complaint if necessary to restore jurisdiction, and the undersigned concludes that plaintiff could remove any jurisdictional

9

bar under *Rooker-Feldman* by filing an amended complaint seeking damages instead of injunctive relief. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend a complaint] when justice so requires."). Accordingly, defendant's jurisdictional argument under *Rooker-Feldman* is not well-taken.

### B. Claim Preclusion

In considering preclusion doctrines, "[f]ederal courts must give the same preclusive effect to a state-court judgment as that judgment receives in the rendering state." *Abbott v. Michigan*, 474 F.3d 324, 330 (6th Cir. 2007) (citing 28 U.S.C. § 1738). Therefore, in determining whether the present case is barred, the Court looks to the state law of Ohio. "Under Ohio law, the doctrine of res judicata consists of the two related concepts of claim preclusion, also known as res judicata or estoppel by judgment, and issue preclusion, also known as collateral estoppel." *Ohio ex rel. Boggs v. City of Cleveland*, 655 F.3d 516, 519 (6th Cir. 2011) (citation and quotation marks omitted). Defendant contends that only claim preclusion is applicable here. (*See* Doc. 3 at 7).

As to claim preclusion, the Ohio Supreme Court has held that a "valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Grava v. Parkman Twp.*, 653 N.E.2d 226, 229 (Ohio 1995). Relying primarily on this holding, the Sixth Circuit has stated that claim preclusion under Ohio law has four elements:

> (1) a prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action.

*Hapgood v. City of Warren*, 127 F.3d 490, 493 (6th Cir. 1997) (citation omitted).

Under Ohio law, default judgments are judgments on the merits which can be attacked only on direct appeal. *See Fed. Deposit Ins. Corp. v. Willoughby*, 482 N.E.2d 1267, 1270 (Ohio Ct. App. 1984). Therefore, default judgments can act as a bar to later claims under the doctrine of claim preclusion. *See Astar Abatement, Inc. v. Cincinnati City Sch. Dist. Bd. of Educ.*, No. 1:11-cv-587, 2012 WL 481799, at *6 (S.D. Ohio Feb. 14, 2012). *See also Morris v. Jones*, 329 U.S. 545, 550-51 (1947) ("A judgment of a court having jurisdiction of the parties and of the subject matter operates as res judicata, in the absence of fraud or collusion, even if obtained upon a default."). Ohio law provides for compulsory counterclaims:

> A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against the opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

Ohio R. Civ. P. 13(A).

Here, the elements of claim preclusion are satisfied. First, the Hamilton County Court of Common Pleas's December 14, 2010 order confirming the magistrate's foreclosure decision constituted "a prior final, valid decision on the merits by a court of competent jurisdiction." *See Hapgood*, 127 F.3d at 493. Even though the state court judgment was entered against plaintiff by default, it can still act as a bar to plaintiff's instant claims. *See Morris*, 329 U.S. at 550-51; *Astar Abatement, Inc.*, 2012 WL 481799, at *6. Second, the parties in the instant lawsuit were parties to the prior foreclosure action in state court. Third, plaintiff could have raised his instant claim—concerning "fictitious filings," irregularities in the allonge, and defendant's lack of ownership of the promissory note—as a defense in the state suit, and he should have raised it as a compulsory counterclaim. *See* Ohio R. Civ. P. 13(A). *See also Sessley v. Wells Fargo Bank*, No. 2:11-cv-348, 2012 WL 726749, at *2 (S.D. Ohio Mar. 6, 2012) (recounting procedural history of an FDCPA case and stating that the FDCPA claim had originally been brought as a

counterclaim during the original state foreclosure proceedings). In fact, both plaintiff and his wife extensively litigated these defenses in the state court, and the state court rejected them. (*See* Doc. 3-4, Exh. 4; Doc. 3-5, Exh. 5; Doc. 3-6, Exh. 6; Doc. 3-7, Exh. 7; Doc. 3-9, Exh. 9; Doc. 3-10, Exh. 10; Doc. 3-11, Exh. 11). Finally, plaintiff's instant claim arises "out of the transaction or occurrence that was the subject matter of the previous action." *See Hapgood*, 127 F.3d at 493. In considering this prong, Ohio courts consider whether there is a "common nucleus of operative facts." *Grava*, 653 N.E.2d at 229 (quoting Restatement (Second) of Judgments § 24 cmt. b (1982)). As already noted in the analysis of the third prong, the facts relevant to plaintiff's FDCPA claim—concerning defendant's alleged fictitious filings, the allonge, and defendant's lack of ownership of the promissory note—are the same as those that plaintiff and his wife actually raised in the foreclosure action. Accordingly, plaintiff's instant FDCPA claim is precluded, defendant's res judicata argument is well-taken, and defendant's motion to dismiss should be granted.

## IV. Conclusion

Based on the foregoing, the undersigned **RECOMMENDS** that defendant's motion to dismiss (Doc. 3) be **GRANTED**.

Date: 10/30/15

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

RODNEY RIDDLE,
    Plaintiff,

    vs.

WELLS FARGO BANK NATIONAL
ASSOCIATION,
    Defendant.

Case No: 1:15-cv-533

Dlott, J.

Litkovitz, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).